IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| BRUCE A. ESTES,<br><br>        Plaintiff,<br><br>        v.<br><br>VIRGINIA DEPARTMENT OF CORRECTIONS; RIVER NORTH CORRECTIONAL CENTER; HAROLD W. CLARKE, Director of Corrections in the Commonwealth of Virginia; A. DAVID ROBINSON, Chief of Corrections Operations in the Commonwealth of Virginia; H. PONTON, Western Regional Director of Corrections in the Commonwealth of Virginia; JOHN WALRATH, Warden of River North Correctional Center; JESSICA KING, Operations Manager of River North Correctional Center; and BRIAN HALL, Institutional Programs Manager of River North Correctional Center,<br><br>        Defendants. | Civil Action No. 7:15-cv-00155 |

## SECOND AMENDED COMPLAINT

Plaintiff Bruce A. Estes, by his undersigned attorneys Morrison & Foerster LLP, for his Second Amended Complaint, alleges as follows:

### INTRODUCTION

1.     This is an action by Bruce A. Estes, a Jewish inmate of the Virginia Department of Corrections ("VADOC") currently incarcerated at the River North Correctional Center ("River North"), for relief under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, and the Virginia Religious Freedom

1

Restoration Act ("Virginia RFRA"), Virginia Code Ann. § 57-2.02, as a result of unlawful burdens imposed on Mr. Estes' religious exercise.

2. Keeping kosher is a central tenet of Judaism observed by Mr. Estes, and VADOC's and River North's failure to provide Mr. Estes with kosher meals – a de facto ban – substantially burdens his religious exercise of keeping kosher.

3. VADOC and River North also impose substantial burdens on several other religious exercises that Mr. Estes engages in. Among other things, VADOC and River North prohibit him from praying in a Jewish prayer service, prohibit certain religious observances such as the blowing of the *Shofar* (ram's horn) on the high holiday of *Rosh Hashanah* (the Jewish new year), and refuse to recognize certain Jewish fast days. VADOC and River North have imposed substantial burdens – prohibitions – on each of these religious exercises.

4. The substantial burdens that VADOC's and River North's policies relating to dietary policies and religious practice imposed on Mr. Estes are substantial and not necessary to achieve any compelling state interests.

5. Mr. Estes has made numerous requests to VADOC and River North for religious accommodation. Indeed, by letter dated March 30, 2015 (entitled "Grievance Restriction Warning"), VADOC notified Mr. Estes that his requests for religious accommodations were "excessive" and constituted "habitual misuse" of the grievance process and warned Mr. Estes against the continued use of the grievance process in such manner. VADOC reiterated its warning to Mr. Estes in a letter on May 16, 2016, requesting he cease his "misuse" of the grievance process.

6. RLUIPA was enacted unanimously by Congress to ensure that the core principle of religious freedom—that the State should not impose burdens that interfere with the religiously

informed conscience of its citizens—is not just for the powerful or the virtuous, but instead extends even to the lawbreaker and the politically powerless.  The same is true for Virginia RFRA.

7.      Mr. Estes seeks declaratory and injunctive relief to lift the burdens on his religious exercise, to remedy Defendants' violations of the law, and to ensure that VADOC and River North implement sustainable reforms that guarantee the religious freedoms protected by RLUIPA and Virginia RFRA.

## PARTIES

8.      Plaintiff Bruce A. Estes has been a VADOC inmate since 2005 and has been incarcerated at River North Correctional Center since 2013.  Mr. Estes is a practicing Jew, is sincere in his Jewish religious beliefs, and has successfully demonstrated to VADOC the sincerity of his Jewish religious beliefs by passing VADOC's religious sincerity test.

9.      Defendant Virginia Department of Corrections is an agency of the Commonwealth of Virginia having responsibility for the confinement and habilitation of individuals under custody at state facilities.  VADOC receives federal funding and is an "institution" within the meaning of 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

10.     Defendant River North Correctional Center is located in Independence, Virginia, and is an "institution" within the meaning of 42 U.S.C. §2000cc-1(a) and 42 U.S.C. § 1997.  River North is operated by VADOC.

11.     Defendant Harold W. Clarke is the Director of Corrections in the Commonwealth of Virginia.  He is sued here in his official capacity.

12.     Defendant A. David Robinson is the Chief of Corrections Operations in the Commonwealth of Virginia.  He is sued here in his official capacity.

13. Defendant H. Ponton is the Western Regional Director of Corrections in the Commonwealth of Virginia. He is sued here in his official capacity.

14. Defendant John Walrath is the Warden of River North. He is sued here in his official capacity.

15. Defendant Jessica King is the Operations Manager of the River North Correctional Center. She is sued here in her official capacity.

16. Defendant Brian Hall is the Institutional Programs Manager of the River North Correctional Center. He is sued here in his official capacity.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

18. The declaratory and injunctive relief sought by Mr. Estes is authorized by 42 U.S.C. § 2000cc-2(a) and 28 U.S.C. §§ 2201 and 2202.

19. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b). Defendants operate correctional facilities in the Western District of Virginia, including River North in which Mr. Estes is incarcerated.

## FACTUAL ALLEGATIONS

Defendants Do Not Provide Kosher Meals to Mr. Estes

20. "[T]he observance of kosher has been a hallmark of Jewish identity. Perhaps more than any other 'mitzvah,' the kosher laws emphasize that Judaism is much more than a 'religion' in the conventional sense of the word. To the Jew, holiness is not confined to holy places and times outside the everyday; rather, life in its totality is a sacred endeavor. Even the seemingly mundane activity of eating is a G‑dly act and a uniquely Jewish experience."[1]

---

[1] *See* http://www.chabad.org/library/howto/wizard_cdo/aid/113425/jewish/What-is-Kosher.htm (last visited June 9, 2016).

21. Kosher dietary laws (also known as the laws of *Kashrut*) include mandates on which food and ingredients can and cannot be consumed; how food is cooked, prepared, stored, and served; as well as on the cleaning of pots, plates, and utensils. To be kosher, a food item must be derived from religiously acceptable sources, stored in kosher containers, prepared in a particular manner, and served on kosher tableware. In addition, meat and poultry may not be mixed with dairy products.

22. Complete separation of kosher and non-kosher food is one of the hallmarks of the laws of *Kashrut*. The religious laws of *Kashrut* are extremely detailed.

23. Food that would otherwise be kosher can become non-kosher if, for example, it is (i) mixed with non-kosher food, (ii) cooked or brought into contact with pots or utensils that have been used in the preparation of non-kosher food, (iii) cooked in an oven that was used to cook non-kosher food, or (iv) brought into contact with pots or utensils that were cleaned in a dishwasher also used for non-kosher kitchen items.

24. In addition, many Jews will eat food products only when they know that highly competent skilled and learned Jews have supervised the entire process: the source, preparation, and service of the product. This is often referred to as "rabbinical supervision."

25. VADOC and River North provide three meal options to River North inmates: general population meals, vegetarian meals, and common fare meals. VADOC's Food Service Manual defines common fare meals as "[a]n appropriate religious diet for offenders whose religious dietary needs cannot be met by the Master Menu." Mr. Estes participates in the common fare meal plan.

26. Upon information and belief, from 2005 until about January 2007, VADOC provided Jewish inmates with prepackaged kosher entrées on the common fare meal plan.

VADOC ceased this practice without explanation.

27. Upon information and belief, the meal plans currently offered by VADOC at River North, including the common fare meal plan, do not comply with Orthodox Jewish kosher laws and are, therefore, not in any way acceptable as substitutes or alternatives to a kosher diet for Mr. Estes.

28. Mr. Estes has submitted numerous complaints and grievances to VADOC and River North requesting kosher food consistent with his religious beliefs. VADOC and River North have denied these requests. Upon information and belief, the only bases asserted by VADOC and River North for not providing kosher meals are increased cost, lack of space, and increased responsibilities for staff, each of which (and together) are wholly insufficient to constitute compelling government interests.

29. Upon information and belief, the following practices at River North, among others, indicate that Mr. Estes is not provided with kosher food in accordance with his Jewish beliefs:

    a. Common fare and general population trays and utensils are washed in the same sinks and dishwashers.

    b. The oven used to bake and prepare common fare food is located in the main kitchen and, prior to being used for common fare foods, is used in preparation of general population foods.

    c. The kitchen at River North has never been certified kosher by any *Kashrut* authority and neither have any of the pots, pans, utensils, serving trays, ovens, or cooking surfaces used for the common fare meal plan.

    d. General population and common fare meals are served on the same steam tables.

    e. General population and common fare meals are prepared on the same preparation counters.

30. VADOC and River North do not provide access to Mr. Estes to view the labeling

on food provided to him, and, therefore, he has no way of determining whether the food purchased by VADOC and River North for the common fare meal plan is kosher and is certified by a recognized Orthodox Jewish certification standard.

31. VADOC and River North also do not provide Mr. Estes with food that is kosher for Passover. Food that is "kosher for Passover" is subject to an additional set of *Kashrut* laws; most notably all leavened bread ("chametz") must be excluded. Upon information and belief, River North prepares Passover meals for Jewish inmates in the same kitchen area as where non-kosher for Passover food is prepared, thereby rendering what may otherwise be kosher for Passover meals unfit for consumption by Mr. Estes and others with his Jewish beliefs.

32. VADOC does not employ anyone knowledgeable in the laws of *Kashrut* to oversee the common fare meal plan or to supervise the purchasing, handling, preparation, and serving of common fare food at River North.

33. VADOC's refusal to provide kosher meals at River North forces Mr. Estes to violate his core religious beliefs and substantially burdens his religious exercise. VADOC's refusal to provide kosher meals at River North is a de facto prohibition on consumption of a kosher diet.

34. This prohibition constitutes a substantial burden.

35. The substantial burden that VADOC's dietary policies impose on Mr. Estes is not necessary to achieve any compelling state interest. Indeed, the Federal Bureau of Prisons and most state departments of correction offer kosher meals while achieving interests that are indistinguishable from VADOC's. Moreover, VADOC previously offered inmates kosher entrées, demonstrating that it can provide kosher food consistent with its compelling interests.

Defendants Do Not Permit Mr. Estes to Pray in a Manner Required by Jewish Law

36. Prayer is a central tenet of the Jewish religion and engaging in the religious exercise of prayer is absolutely essential to Mr. Estes' fulfillment of his religious duties. "Jewish Law makes it [a] duty to pray three times daily."[2] In addition, under Jewish law, a quorum of ten Jewish adults (also known as a *Minyan*) is required for prayer services. Jewish law provides that one must make a serious effort to pray with a congregation, but, even when there is no quorum of ten Jewish adults available for prayer, it is nevertheless meritorious to pray in a group.

37. The only prayer service available to Jewish inmates of River North is a service labeled by River North as a "Messianic" service. This prayer service includes inmates not considered to be Jewish by Orthodox Jewish religious law, such as Messianics and followers of the House of Yahweh, who have distinctly different customs, traditions, and prayers from those mandated by Jewish law as taught by Orthodox Jewish rabbis and believed by Mr. Estes. For Orthodox Jewish rabbis and Mr. Estes, adherents of these religions do not count toward a prayer quorum, or *Minyan*.

38. Mr. Estes has made numerous requests to VADOC and River North for separate prayer services for Jewish inmates at River North. VADOC and River North have refused Mr. Estes' requests. Upon information and belief, the only bases asserted by VADOC and River North for not providing a separate Jewish prayer service are increased cost, lack of space, and increased responsibilities for staff, each of which (and together) are wholly insufficient to constitute compelling government interests.

39. VADOC's and River North's ban on separate Jewish prayer services at River North forces Mr. Estes to violate his core religious beliefs and constitutes a substantial burden on

---

[2] *See* http://www.chabad.org/library/article_cdo/aid/682091/jewish/The-Three-Daily-Prayers.htm (last visited June 9, 2016).

his religious exercise of prayer.

40. VADOC's refusal to permit Jewish prayer services also violates its own policies. For example, VADOC's Operating Procedure ("DOP") for Offender Religious Programs 841.3 § IV.F.12 provides that "[t]he standard minimum number of offenders required to establish, maintain and hold group services, programs or meetings for a religious group is five." Additionally, DOP 841.3 § IV.F.12.b provides that "[n]o recognized religious group with a minimum number of adherents should be denied at least one service and one study session per week." Upon information and belief, there are more than five Jewish inmates currently incarcerated at River North who are interested in Jewish prayer services, including Mr. Estes.

41. At any rate, VADOC DOP 841.3 § IV.F.12, requiring a minimum number of religious followers for prayer services and study sessions, unlawfully imposes a substantial burden on the religious exercise of inmates with sincere religious beliefs, without any compelling government interest.

42. Even though VADOC and River North would force Jewish inmates to pray together with the Messianics and Yahwists, VADOC itself already recognizes that Judaism is different from the Messianic and Yahwist faiths. For example, VADOC DOP 841.3 § IV.C.5 provides that "Jewish holy days and seasons may be observed by Jews, Messianic Jews, and Yahwists," and that "Jews should observe these holy days, seasons, meals, and services separately from Messianic Jews and Yahwists to the extent possible within space, time, and staff resources." Similarly, Attachment 3 to DOP 841.3, titled "Religions Approved to Operate in DOC Facilities," lists "Jewish," "Messianic Jews," and "Yahwists" as separate religions.

43. Followers of Judaism are mandated by religious authority not only to observe Jewish law, but also to study it at every opportunity.

44. Mr. Estes has requested that VADOC and River North permit Jewish inmates to hold religious study sessions. VADOC and River North have refused Mr. Estes' requests.

45. VADOC's and River North's ban on Jewish inmates holding religious study sessions at River North forces Mr. Estes to violate his core religious beliefs and substantially burdens his religious exercise.

46. The substantial burdens imposed on Mr. Estes by VADOC's and River North's refusal to permit Jewish prayer services and religious study sessions are not necessary to achieve any compelling government interest. Indeed, VADOC specifically allows prayer services and study sessions (for example, DOP 841.3 § IV.F.12.b provides that "[n]o recognized religious group with a minimum number of adherents should be denied at least one service and one study session per week"), demonstrating that it can permit Jewish prayer services and religious study sessions to Jewish inmates consistent with its compelling interests.

Other Violations of Mr. Estes' Religious Rights

47. VADOC and River North have imposed substantial burdens on other religious exercises that Mr. Estes seeks to carry out in accordance with his sincere Jewish religious beliefs.

*Prohibition on Blowing of Shofar*

48. The blowing of a ram's horn (or *Shofar*) is an important tradition required by Jewish law on the Jewish high holidays of Rosh Hashanah and Yom Kippur. "A shofar is a horn of a kosher animal with the marrow removed. Blow into a shofar, and you get a shofar blast. Blow the right sequence of blasts at the right time of year, and you've got a great mitzvah."[3] During the morning prayers of Rosh Hashanah and at the end of Yom Kippur, Jewish law mandates that all Jews must hear the blowing of a series of blasts on the Shofar.

---

[3] *See* http://www.chabad.org/holidays/JewishNewYear/template_cdo/aid/4837/jewish/Shofar.htm (last visited June 9, 2016).

49. Mr. Estes requested from VADOC and River North permission to use a *Shofar* during Jewish prayer services on the high holidays of Rosh Hashanah and Yom Kippur. VADOC and River North have refused Mr. Estes' requests.

50. For example, by letter dated March 28, 2016, entitled "Request for Approval of Faith Object," in response to a request that Mr. Estes made to VADOC asking for access to a *Shofar*, VADOC informed Mr. Estes that it had "disapproved" his request.

51. VADOC's and River North's refusal to allow the blowing of a *Shofar* during prayer services on the high holidays of Rosh Hashanah and Yom Kippur at River North forces Mr. Estes to violate his core religious beliefs and substantially burdens his religious exercise.

52. The substantial burden imposed on Mr. Estes by VADOC's and River North's refusal to allow the blowing of a *Shofar* during services on the high holidays of Rosh Hashanah and Yom Kippur is not necessary to achieve any compelling government interest.

*VADOC and River North Refuse to Recognize Certain Jewish Fast Days*

53. Jewish law mandates observance of several fast days each year. Yom Kippur is the most well known of the Jewish fast days, but there are other important fast days on the Jewish calendar as well. Among these additional Jewish fast days are *Asara b'Tevet*, *Shivah Asar B'Tammuz*, and *Tisha b'Av*.

54. VADOC and River North refuse to recognize *Asara b'Tevet* (commemorating the siege of Jerusalem by Nebuchadnezzar II of Babylonia that ultimately culminated in the destruction of Solomon's Temple (the First Temple)), *Shivah Asar B'Tammuz* (commemorating the first breach in the walls of Jerusalem before the First Temple was destroyed), and *Tisha b'Av* (a day of mourning to commemorate the many tragedies that have befallen the Jewish people, including the destruction of the First Temple) as religious fast days at River North.

55. These Jewish fast days end at nightfall, and Mr. Estes has requested that VADOC and River North accommodate his religious exercise by serving him dinner after the conclusion of these fasts. VADOC and River North have refused Mr. Estes' requests.

56. For example, by letter dated March 28, 2016, entitled "Request for Approval of Faith Object," in response to a request made by Mr. Estes for VADOC to recognize these Jewish fast days, VADOC wrote without any explanation that it had "disapproved" his request.

57. VADOC's and River North's refusal to recognize Jewish religious fast days at River North forces Mr. Estes to violate his core religious beliefs and substantially burdens his religious exercise of engaging in the fasts. In essence, VADOC and River North are extending the period of Mr. Estes' fasts until breakfast the following day, which results in hunger and pain for Mr. Estes. In addition, inmates on the common fare meal plan are required to take at least seventy five percent of the common fare meals served per month, so Mr. Estes risks suspension or removal from the common fare meal plan if he does not take food on those fasts days.

58. The substantial burden imposed on Mr. Estes by VADOC's and River North's refusal to recognize Jewish religious fast days is not necessary to achieve any compelling government interest. Indeed, VADOC and River North accommodate the Jewish fast day of Yom Kippur and, upon information and belief, the fast days of other religions, such as Ramadan, demonstrating that it can accommodate these Jewish fast days consistent with its compelling interests.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**(Defendants' Actions Violate RLUIPA)**

59. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-58 as

if fully set forth herein.

60. Defendants do not provide kosher meals to Mr. Estes in accordance with his religious beliefs.

61. Defendants also do not allow Mr. Estes to pray in a Jewish prayer service and hold Jewish study sessions, to observe religious obligations such as the blowing of the *Shofar* on *Rosh Hashanah*, and they do not accommodate his observance of certain Jewish fast days.

62. Defendants' actions constitute a substantial burden on Mr. Estes' religious exercise and they are not the least restrictive means of furthering any compelling government interest.

63. Accordingly, Defendants' actions violate RLUIPA, 42 U.S.C. § 2000cc-1.

## SECOND CLAIM

### (Defendants' Actions Violate Virginia RFRA)

64. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-58 as if fully set forth herein.

65. Defendants do not provide kosher meals to Mr. Estes in accordance with his religious beliefs.

66. Defendants also do not allow Mr. Estes to pray in a Jewish prayer service and hold Jewish study sessions, to observe religious obligations such as the blowing of the *Shofar* on *Rosh Hashanah*, and they do not accommodate his observance of certain Jewish fast days.

67. Defendants' actions constitute a substantial burden on Mr. Estes' religious exercise and are not (i) essential to further a compelling government interest and (ii) the least restrictive means of furthering that compelling government interest.

68. Accordingly, Defendants' actions violate Virginia RFRA, Va. Code Ann. § 57-

2.02.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

a. Declare that Defendants have violated RLUIPA and Virginia RFRA;

b. Order Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them to (i) provide Plaintiff with nutritionally sufficient kosher meals, (ii) permit Plaintiff to hold separate Jewish prayer services and study sessions, (iii) permit Plaintiff to observe religious obligations such as the blowing of the *Shofar* on *Rosh Hashanah* and *Yom Kippur*, and (iv) recognize all Jewish fast days, including *Asara b'Tevet*, *Shivah Asar B'Tammuz*, and *Tisha b'Av*, and accommodate Plaintiff's religious observance of those fasts.

c. Declare that VADOC's Offender Religious Programs Operating Procedure 841.3, described herein, violates RLUIPA and Virginia RFRA, including (i) deeming the non-kosher common fare meal plan to be an appropriate religious diet for religious Jewish inmates, and (ii) requiring a minimum number of religious adherents for prayer services and religious study sessions.

d. Award to Plaintiff full costs and attorney's fees arising out of this litigation; and

e. Order such other relief as the interest of justice may require.

Dated: June 9, 2016  Respectfully submitted,

By: /s/ John A. Trocki III
John A. Trocki III
(Virginia Bar No. 38656)
MORRISON & FOERSTER LLP
1650 Tysons Boulevard
Suite 400
McLean, VA 22102
Telephone: 703.760.7700
Facsimile: 703.760.7777
E-mail: jtrocki@mofo.com

Joel C. Haims (admitted *pro hac vice*)
Justin D. Mayer (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900
E-mail: jhaims@mofo.com
jmayer@mofo.com

Attorneys for Plaintiff Bruce A. Estes