IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRUCE A. ESTES, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15-cv-00155 |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

This civil rights action was originally resolved in October 2018, with entry of a consent order ("the 2018 Consent Order") that addressed the remaining claims of plaintiff Bruce A. Estes. (Dkt. No. 179.) As is relevant here, that order set forth certain obligations of the Virginia Department of Corrections ("VDOC") regarding providing Estes a religious diet consistent with his Orthodox Jewish beliefs. (*See generally id.*)

Less than two weeks after that order was entered, Estes began sending letters to the Clerk arguing that the consent order was not being followed by defendants. After briefing, the case was set for an evidentiary hearing to address Estes's allegations. Before the hearing occurred, however, the parties provided a supplemental consent order regarding Estes's claims, which the court entered on March 17, 2020 ("the 2020 Consent Order"). (Dkt. No. 208.) As noted by the court, Estes's motion for contempt was deemed withdrawn. (Dkt. No. 209.)

Approximately one month after entry of the 2020 Consent Order, Estes filed another motion asking for an order of contempt. After briefing, the court denied that motion for contempt on December 15, 2020. (Dkt. No. 216.)

Nine months later, in September 2021, Estes filed the first of a number of motions that are pending before the court and addressed in this memorandum opinion. In general terms, those motions continue to assert that defendants are not in compliance with the 2018 and 2020 Consent

Orders, and request again that defendants be held in contempt. Some also request injunctive relief. Defendants have responded to some of Estes's motions, and the time for responding to others has passed. Thus, the court considers them all ripe. For the reasons set forth herein, the court will deny all of Estes's pending motions.

I. ESTES'S MOTIONS

Estes has filed the following eight motions, which are pending before the court:

1. Motion for order to hold defendants in contempt (2018 Consent Order) (Dkt. No. 220);
2. Motion to investigate and intervene (Dkt. No. 224);
3. Motion for an emergency injunction (2018 Consent Order) (Dkt. No. 229);
4. Motion for an order to hold defendants in contempt (2018 Consent Order) (Dkt. No. 230);
5. Motion for an order to hold defendants in contempt (2020 Consent Order) (Dkt. No. 233);
6. Motion for an order to hold defendants in contempt (2018 Consent Order) (Dkt. No. 234);
7. Letter motion to compel (Dkt. No. 236); and
8. Motion for an order to hold defendants in contempt (2018 Consent Order) (Dkt. No. 240).

The court also has considered responses filed by defendants (Dkt. Nos. 223, 235) and plaintiff's replies (Dkt. No. 226, 237), as well as numerous declarations and other documents submitted by Estes but not docketed as motions (Dkt. Nos. 221, 225, 227, 228, 231, 232, 238, 239).

Throughout his filings, there are four basic issues or complaints that Estes raises. The first issue was raised in his first pending motion for contempt (Dkt. No. 220), wherein Estes asserts that, in violation of the 2018 Consent Order, defendants are serving him meals that are being cooked at a VDOC facility instead of providing him "with prepackaged kosher meals that contain an acceptable kosher certification" as required by the Consent Order. The 2018 Consent Order includes an exhibit with a list of "acceptable" certifications, and the certification currently used for the prepackaged meals is from Vaad HaKashrus of Tidewater ("VHT"), which is not

2

listed on the exhibit. Estes claims that VDOC is "taking advantage" of a portion of the 2020 Consent Order that allowed them to provide boiled eggs and sliced bread "packaged under the supervision of a rabbi from" VHT and instead began to prepare and cook entrees with a VHT certification. He requests that the court hold defendants in contempt and direct that they comply with the 2018 Consent Order. He also asks the court to sanction defendants for their "willful disregard of the consent decree." (Mot. for Contempt 3, Dkt. No. 220).

In response to these allegations, defendants point out that Vaad HaKashrus of Tidewater was listed as an acceptable kosher certification for milk and juice in the 2018 Consent Order. They note that, "[i]n an effort to provide a broader variety of foods," VDOC began providing boiled eggs and sliced kosher bread under the supervision of a rabbi of VHT, to which Estes agreed in the 2020 Consent Order. (Dkt. No. 223 at 2.) Then, after VDOC was able to build a kosher kitchen, called its Kosher Sealed Diet Plant, it began providing prepackaged meals to Estes and other inmates prepared under the supervision of a rabbi from VHT. According to Mark Engelke, the Director of Food Services for VDOC, the meals prepared there "are prepared under an orthodox Rabbi's supervision and all ingredients used in the preparation of sealed entrees are Kosher certified . . . ." (Engelke 3rd Aff. ¶ 2, Dkt. No. 223-2.)

Defendants' response concedes that the meals being prepared in its Kosher Sealed Diet Plant do not have an "acceptable kosher symbol" from the list of "acceptable" kosher symbols in the exhibit to the original consent order. But they contend that one of the things plaintiff sought through this litigation was meals cooked and prepared by VDOC and certified as kosher by an orthodox rabbi. They posit: "Implicit in the consent order is that orthodox rabbinical supervision is the key to maintaining and ensuring kosher." (Dkt. No. 223 at 3.) They claim that plaintiff's argument is therefore "elevat[ing] form over substance to an absurdity." (*Id.*) They further contend that "[t]he certification of VHT is a kosher certification from an orthodox rabbi which

meets the spirit if not the precise letter of the agreements." (*Id.*) In support of the factual bases underlying their arguments, they have provided Engelke's affidavit, in which he avers that the prepared meals are kosher and certified kosher.[1]

## A. Diet Changes During COVID-19-related Emergency in January and February 2022

The second and third of Estes's complaints are related. Specifically, his second complaint is that he was being denied pre-packaged meals altogether during a COVID-19-related emergency menu period at his current facility, Green Rock Correctional Center. His third is that he was denied kosher desserts given to other inmates during that same COVID-19-related emergency menu period, which he says violates the 2020 Consent Order.

The second complaint, in which Estes alleges that he was denied prepackaged kosher meals altogether during the emergency period, was first raised in his "motion for emergency injunction" (Dkt. No. 229). In that motion, he states that on one occasion (on Saturday, January 22, 2022), he was not given a prepackaged kosher meal but was instead presented a with "regular fare meal which is not kosher and is cooked in the facility kitchen." (Dkt. No. 229 at 1.) On that occasion, he had to forego eating in order to not violate his religious beliefs. In a later filing, he states that he was told there was a kitchen staffing shortage and there was insufficient time to heat plaintiff's meals. (Dkt. No. 230 at 2.) He further states that this occurred after the facility was "placed on an extended emergency menu which does not include any religious meals." (*Id.* & Ex. 1, Dkt. No. 230-1.) In an attached declaration, Estes stated that the facility only had a limited number of inmate kitchen workers because of positive COVID-19 cases and that there

---

[1] Engelke also explains that, since VDOC's Kosher Sealed Diet Plant began producing cooked entrees in September 2020, "there have been ongoing problems with the ink on the Kosher certification labels." In particular, the symbols sometimes "fade off the label during the cooking process." (Engelke 3rd Aff. ¶ 5 & Encl. B, C.) "As a possible solution," VDOC is "looking into equipment that will imprint the name of the product and Kosher symbol directly onto the plastic wrap." (*Id.* ¶ 5.) In a subsequent letter to the court, Estes makes clear that he is not complaining about faded or missing certifications. He is aware that "VHT is the symbol on the entrees VDOC is producing." Instead, "[t]he problem is that VHT is not one of the symbols VDOC agreed would be on prepackaged meals they would provide" to Estes. (Dkt. No. 227 at 1.)

was insufficient time to prepare special meals on that date. (Estes Decl. at 2, Dkt. No. 230-2.) In a letter than appears to be dated January 26, 2022 (and postmarked January 27), Estes says he is still being denied kosher meals and that he eats "very little daily." That letter also provides a copy of the VDOC memo that explains that, during the COVID emergency menu period, VDOC is accommodating inmates who are supposed to receive special religious meals by giving them a stipend of $25 per day to purchase food through VDOC's commissary, including kosher foods. (Dkt. No. 231 at 2.)

As to the denial of desserts, Estes complains that this denial violated the 2020 Consent Order. In particular, that order includes a provision that states: "To the extent any inmates are provided individually packaged and sealed desserts with an acceptable orthodox Jewish kosher certification, as provided for in the consent order, Mr. Estes shall be provided with that dessert as well." Contrary to this requirement of the 2020 Consent Order, Estes said that during the "emergency menu period, all inmates have been provided kosher desserts," but plaintiff has not received them. When he complained to the kitchen supervisor, she said that, "Per Mr. Epps," he would not be getting what everyone else was getting. (Dkt. No. 233; *see also generally* Estes Decl. dated Feb. 8, 2022, Dkt. No. 233-1.)

Defendants' response acknowledges that, because of a spike in COVID-19 cases at his facility and a lack of kitchen workers, Green Rock was placed in "Emergency Meal Status" from January 22, 2022, to February 7, 2022. During that time, indigent inmates on a religious diet were eligible to receive a $25 stipend per day to order kosher and halal items to supplement their diet. (*See generally* Engelke 4th Aff., Dkt. No. 235-1.) The Food Service Extended Emergency Menu and the list of available items from the commissary reflect that $25 per day could buy a fair quantity of kosher food. The kosher items listed include a variety of snacks (cookies, crackers, other desserts, chips, pretzels, popcorn, crackers with peanut butter, and a "health

5

mix"), as well as more substantial snacks or foods, such as "mac n cheese," "cheesy rice," oatmeal, peanut butter and jelly, spicy refried beans, bagels, nuts, tortillas, and tuna. (*Id.*, Dkt. No. 235-1 at 5–8.)

### B. Complaints Regarding "Spoiled" Eggs and Meals with Broken Seals

In other filings, Estes raises what the court identifies as his fourth issue, which has two parts. First, he complains that he is being served eggs that are "spoiled" on a daily basis. (*See, e.g.*, Dkt. No. 228, Dkt. No. 234.) Second, he complains that he often receives prepackaged meals with "one or both" of the seals broken, rendering the meal non-kosher. (Dkt. No. 234 at 2.) He asks that the court hold defendants in contempt for failing to comply with both consent decrees and order that they "immediately stop serving spoiled food, prepackaged kosher meals in open containers with seals open and provide disposable eating utensils." (Dkt. No. 234 at 4.)

Defendants have not expressly responded to these allegations, but the court record includes their responses to Estes's complaints and grievances. With regard to the eggs, the Food service director responded: "The egg[s] come in weekly and was in date. I will talk to the plant about the issue you are having." (Dkt. No. 236-1 at 7.) As to the broken seals, prison officials responded: "Sealed religious meals are inspected for breaks in the seal before leaving the kitchen by the food service supervisors. If you receive a meal where the seal has broken, we will heat a new entrée and send it to you." (Dkt. No. 236-1 at 2.)

### C. Other Complaints

Some of the other issues Estes raises in his many filings are simply not cognizable in this case, or suffer from other deficiencies. For example, in his motion to investigate and intervene, Estes argues that the "common fare diet" is not kosher, and he criticizes VDOC for including a statement in the VDOC "Religious Diet Request" that "The common fare diet is kosher using Kashrut Methods." (Dkt. No. 224 at 1–2.) Related to this, he asks that the court "investigate and

intervene" into the matter. But even if misleading to other Jewish inmates, it is not misleading *to Estes*, and no harm has occurred to him as a result. Notably, he is not receiving a common fare diet. And he may not bring claims on behalf of other prisoners or represent their interests. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

Furthermore, the court does not "investigate" such situations. If Estes believes a constitutional violation is occurring and feels a need to assist his fellow Jewish prisoners, he may contact an attorney to assist them or to investigate his allegations, or he may encourage those prisoners to bring claims themselves. That is not the court's role.

In other documents, Estes includes a laundry list of other ways in which he believes VDOC has attempted to violate the consent order. (*See, e.g.*, Dkt. No. 225 at 2.) Some of these complaints, such as his claim that the kitchen is "providing reusable utensils" and that using them would render the food non-kosher, is an issue not addressed in the consent orders.

Likewise, his complaint that some food is not palatable or tastes horrible is not a complaint that is covered by his consent order, nor does it state a constitutional claim. *See Harrison v. Moteka/Motycka*, No. 9:06-1203-PMD-GCK, 2006 WL 4071598, at *6 (D.S.C. Dec. 1, 2006) (collecting cases and noting that while prisoners have a right to adequate food, they do not have a right to food that is tasty or even appetizing). Estes cannot use the consent orders to morph any and every issue related to his diet or food service into a motion for contempt. Claims that are not part of the consent orders cannot be asserted in this lawsuit, but they may be brought in a separate lawsuit if Estes so chooses. Furthermore, he does not provide sufficient information or argument in support of these other contentions to warrant any further discussion.

In yet another filing, Estes alleges that he was told by the Food Services Director at

Green Rock that there are many non-Jewish inmates being provided the kosher meals. Because of the huge cost associated with this, Estes claims that VDOC "uses every cost-cutting avenue possible, including producing" entrees that "are inedible and taste horrible." In response, he asks this court to order VDOC "to implement a constitutional sincerity test for inmates to receive kosher meals" and points out that such tests are used by corrections departments in other states, as well as by the federal Bureau of Prisons. (Dkt. No. 236 at 2–3.) But again, these matters are not part of this lawsuit. Moreover, it is not this court's place to preemptively set or establish policy for the Virginia Department of Corrections.

In Estes's other documents, he has provided copies of the many grievances he has filed about the various issues he has raised. In sum, he states that it is his "sincere belief that VDOC will continue to circumvent and blatantly ignore and disregard the" Consent Orders. (Dkt. No. 239 at 3.)

## II.  DISCUSSION

In order to find a person in civil contempt, the person moving for a contempt finding must prove each of the following four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*De Simone v. VSL Pharms.*, __ F.4th __, 2022 WL 2036293 (4th Cir. June 7, 2022) (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

The first element is undisputed, and at least some of the relief ordered in the consent orders was in Estes's favor, so the court will assume that the second element is established, as well. The court will discuss the third and fourth elements separately with regard to each of Estes's complaints.

8

### A. Prepackaged Meals Containing Kosher Certification from VHT

The court agrees with Estes that VDOC's provision of meals certified only by VHT is technically a violation of the 2018 consent order. The paragraph on which Estes relies is paragraph 2 of the 2018 Consent Order. In paragraph 1 of the 2018 Consent Order, the order states that VDOC and River North (where he was then incarcerated) "will provide . . . Estes with a religious diet consistent with his Orthodox Jewish beliefs." (Dkt. No. 179 ¶ 1.) Paragraph 2 states: "For lunch and dinner, Estes will be provided with prepackaged kosher meals that contain an acceptable Orthodox Jewish kosher certification. A list of acceptable kosher certifications is attached hereto as Exhibit 1." VHT is not listed on Exhibit 1. Elsewhere, though, the order states that "[t]he kosher certification from the [VHT], attached hereto as Exhibit 2, is acceptable for milk and juice." (*Id.* ¶ 8.) But because Exhibit 1 purports to be an exclusive list of "acceptable kosher certifications" for prepackaged meals for lunch and dinner, and because VHT is not on that list, serving VHT-certified meals for lunch or dinner technically violates the 2018 Consent Order.

Nonetheless, Estes has not shown that his right to a kosher diet is being violated or that he is otherwise being harmed, the fourth element of the contempt test. Similarly, based on the information provided, Estes has not shown an ongoing Eighth Amendment violation, as he is, in fact, being provided with acceptable Kosher food. The question is whether the court can find defendants in contempt for providing a kosher certification that is not contained on the list of acceptable kosher certifications in the Consent Decree.

In most of his filings, Estes does not argue that the VHT certification is not kosher or that the VHT-certified meals are inconsistent with his religious beliefs. He simply reiterates that VHT is not one of the listed "acceptable" certifications in Exhibit 1 to the 2018 Consent Order.

Perhaps the preferable route for VDOC to have taken would have been to approach Estes

(or the court) to ask that the VHT certification be added to Exhibit 1 of the 2020 Order. Had defendants done so, the court would have added VHT as acceptable because Estes has not presented any reason why VHT is not an acceptable certification. Thus, the court finds that, although the use of VHT to certify VDOC's meals as kosher appears to be a technical violation of the consent order, the practice has not caused any harm to Estes. Thus, the court cannot hold defendants in contempt on this basis.

Even if Estes could prove, by clear and convincing evidence, that he was somehow harmed, defendants could nonetheless avoid a contempt finding by establishing one of the defenses to contempt. Defendants seemingly assert that they substantially complied with the two Consent Orders and that they acted in good faith. As another court has explained:

> To benefit from the substantial compliance defense, the violating party must show that it took all reasonable steps to ensure compliance. *See United States v. Darwin Const. Co.*, 873 F.2d 750, 755 (4th Cir. 1989). Importantly, inadvertent omissions are excused only if such reasonable steps were in fact taken. *Id. See also Darwin Const. Co.*, 679 F. Supp. at 536 ("If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." (quoting *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986))).

*Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 615–16 (D. Md. 2017); *see also De Simone*, 2022 WL 2036293, at *6.

With regard to "good faith," there remains some uncertainty as to whether good faith can serve as a defense to civil contempt, at least in the Fourth Circuit. *See Schwartz*, 261 F. Supp. 3d at 616 n.8 (explaining the origins of the uncertainty). *Compare, e.g.*, *Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 WL 3734758, at *3 (M.D.N.C. July 29, 2014) ("Recognized defenses to civil contempt include: (1) a good-faith attempt to comply with the [C]ourt's order; (2) substantial compliance; and (3) an inability to comply.") (citations omitted) *and Consol. Coal Co. v. United Mine Workers of Am.,* 683 F.2d 827, 832 (4th Cir. 1982)

10

(recognizing that all three can constitute a defense to a civil contempt order) *with McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (holding that "good faith alone does not immunize a party from a civil contempt sanction"). In a recent opinion, the Fourth Circuit recognized that if all four contempt elements are established, the alleged contemnor then bears the burden "to demonstrate that she made in good faith all reasonable efforts to comply . . . ." *De Simone*, 2022 WL 2036293, at *5. Thus, it appears that good faith combined with "all reasonable efforts to comply" is a defense. Regardless of whether "good faith" is a defense, defendants have established the substantial compliance defense.

Defendants have substantially complied with the 2018 Consent Order by providing prepackaged kosher meals to Estes, as required. And VDOC has even gone a step further—building its own kosher kitchen and ensuring there is rabbinical supervision of the meal preparation. Moreover, VDOC has obtained kosher certification for its meals from an entity (VHT) that plaintiff said was acceptable for purposes of other kosher products, such as boiled eggs, sliced bread, milk, and juice. These were reasonable steps to ensure compliance with the Consent Orders, particularly because the entire purpose of the orders was to ensure that Estes received kosher meals, which Estes is being provided. It was certainly reasonable of VDOC to conclude, therefore, that its actions complied with the Consent Orders and that any violation was a mere technicality.

Indeed, Engelke notes in his affidavit that the VHT Kosher certification was an acceptable certification to Estes for the items available at that time (milk and juice). Now, the same certification is being used for the sealed entrees prepared by the "Kosher Sealed Diet Plant." (Engelke 3rd Aff. ¶ 6.) Engelke further avers that VDOC makes "a sincere effort to accommodate Estes' food requirements and honor all requirements of the settlement agreement. To the best of my knowledge and belief, all sealed entrees, eggs, bread[,] and cereal are labeled

11

with either the [VHT] Kosher symbol or one of the other acceptable symbols." (*Id.* ¶ 7.)

In light of these facts, which show all reasonable steps to comply and only a technical failure to abide by the precise terms of the consent orders in terms of the listed "acceptable" certifications, the court finds that defendants have established the defense of substantial compliance with regard to this issue. Neither contempt nor further injunctive relief is appropriate.

**B. Alleged Deprivation of Regular Religious Diet and Kosher Desserts During Emergency Caused by COVID-19 Outbreak**

It is unclear whether the approximately two-week period during which Green Rock was subject to an Emergency Food Plan actually violated either of the Consent Orders. In particular, the court finds it significant that all indigent inmates on the religious diet, which presumably includes Estes, were given money for purchasing kosher food on a daily basis, to supplement and replace anything on the regular emergency menu that they could not eat. This also undermines any claim of harm to Estes.

Even if a violation occurred, though, and even if Estes could show by clear and convincing evidence that he was harmed, defendants are entitled to rely on the defense of substantial compliance, as well as the defense of good faith, assuming the latter is available. In particular, as to the sixteen days during which Green Rock was under an emergency food services plan, the court finds that there was a good-faith attempt to comply with the court's order and substantial compliance with it. It is undisputed that there was insufficient staff to serve all special meals (and so likely an inability to comply with the consent orders as well, for that brief period). And instead, VDOC took the reasonable step of providing a stipend to inmates like Estes in order to purchase kosher items from the commissary. Thus, VDOC attempted to balance the need to try to keep inmates and staff safe from a highly contagious disease while still providing sufficient amounts of kosher food to inmates like Estes. An order cannot be so strictly

read that it results in a contempt finding when defendants are attempting to accommodate an outbreak of a contagious disease in the midst of a pandemic. Accordingly, the court finds that defendants have established a defense to any civil contempt based on these issues.

**C. Complaints about Spoiled Eggs and Unsealed Meals**

With regard to Estes's remaining complaints, the court concludes that he has not met his burden of showing, by clear and convincing evidence, that he was harmed. First of all, with regard to the unsealed meals, the responses to his grievances on this issue flatly state that if he receives a tray with a broken seal, he may ask for a new one. He alleges that he often receives trays where "one or two" seals are broken, but he does not allege that he ever asked for a replacement and was denied one. If there is an easy way to obtain a replacement, as it seems, then there is no harm to him from receiving a tray with a broken seal.

The same is true of the allegedly spoiled eggs. The grievance responses suggests that the eggs were not past their expiration date, and Estes provides no facts based on personal knowledge that the eggs were actually harmful, or even inedible. Moreover, the Consent Orders do not direct or require that the food served be delicious or flavorful, or otherwise taste delicious, nor does the Eighth Amendment. *See Harrison v. Moteka/Motycka*, No. 9:06-1203-PMD-GCK, 2006 WL 4071598, at *6 (D.S.C. Dec. 1, 2006) (collecting cases and noting that while prisoners have a right to adequate food, they do not have a right to food that is tasty or even appetizing).

### III.  CONCLUSION

For the foregoing reasons, Estes's motions and requests for relief will be denied. Estes has filed repeated requests for findings of contempt. But "[c]ontempt is a "drastic remedy" and the movant carries a "heavy burden" to establish it. *Morgan v. Barry*, 596 F. Supp. 897, 898 (D.D.C. 1984). Although defendants must make all reasonable efforts to comply with the Consent Orders, Estes cannot expect perfection from an organization that serves as many meals

as his facility does each day.  Occasionally, there will be some mistakes, and such mistakes do not violate his First Amendment rights or his Eighth Amendment rights.  *See Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016) (explaining that, even in the context of special diets based on medical restrictions, prison officials satisfy their Eighth Amendment obligations by simply providing some food that the prisoner is able to eat without compromising his health); *Lovelace v. Lee*, 472 F.3d 174, 194–95, 201–02 (4th Cir. 2006) (holding that to prove a violation of the Religious Land Use and Institutionalized Persons Act or the First Amendment's free exercise clause, a prisoner must show a "conscious or intentional interference" with his rights).  Likewise, occasional mistakes—especially negligent ones—are unlikely to satisfy the standard for civil contempt, either because of a lack of harm or because, despite those mistakes, there is still substantial compliance with the Consent Orders.  Estes is encouraged to keep these principles in mind when considering future motions in this case.

       An appropriate order will be entered.

       Entered: July 1, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge