CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 08, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRUCE A. ESTES,<br>    Plaintiff,<br><br>v.<br><br>VIRGINIA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br>    Defendants. | )<br>)<br>)  Civil Action No. 7:15-cv-00155<br>)<br>)<br>)  By: Elizabeth K. Dillon<br>)      Chief United States District Judge<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This closed civil rights matter, which concerns the religious diet for plaintiff Bruce A. Estes, a Virginia inmate acting *pro* se, was resolved by consent orders entered in 2018 and 2020. (Dkt. Nos. 179, 208.) In 2022, the case was reopened to address several motions filed by Estes. On July 1, 2022, the court issued an opinion and order denying all of plaintiff's motions, including motions to hold defendants in contempt, to compel, and for injunctive relief. (Dkt. Nos. 245, 246.) The case was then closed. (Dkt. No. 248.)

Later in July of 2022, Estes sent a letter and a list of grievances concerning problems and issues with his "sealed religious diet". (Dkt. Nos. 249, 252.) No further action was taken at that time.

On February 28, 2025, Estes filed a motion to compel, to which the defendants have responded. (Dkt. Nos. 254, 255.) On March 24, Estes filed a motion to compel and a motion for contempt. (Dkt. Nos. 256, 257.) On March 31, Estes filed additional evidence, a letter, and a reply in support of his motions to compel. (Dkt. Nos. 258, 259, 260.) The court issued an order directing defendants to respond to the motions to which it had not yet responded. (Dkt. No. 261.) Defendants responded in compliance with this order. (Dkt. Nos. 263.) Estes has also filed additional evidence in support of his contempt motion and motions to compel and responded to

the affidavits filed by defendants. (Dkt. Nos. 262, 264.) The case has been reopened (Dkt. No. 266), and the court will now address the pending motions filed by Estes, which the court considers to be ripe for consideration.

**I. Consent Orders**

In pertinent part, the first consent order provides as follows:

1. The Virginia Department of Corrections ("VDOC") and the River North Correctional Center ("River North", and together with VDOC, the "Defendants")[1] will provide River North inmate Bruce Estes with a religious diet consistent with his Orthodox Jewish beliefs;

2. For lunch and dinner, Estes will be provided with prepackaged kosher meals that contain an acceptable Orthodox Jewish kosher certification. A list of acceptable kosher certifications is attached hereto as Exhibit 1;

3. The prepackaged meals served to Estes shall be comparable in variety consistent with the Common Fare diet and periodically may provide meat (beef and/or poultry) as part of the diet. For the avoidance of doubt, the kosher diet to be provided to Estes is not intended to be purely vegetarian or pescatarian;

4. The prepackaged kosher meals served to Estes shall be either frozen meals or an assortment of frozen or shelf-stable meals;

5. The prepackaged meals may be supplemented to meet nutritional requirements, which may include items that are sealed in their original packaging and contain an acceptable kosher certification;

6. The prepackaged meals will be sealed and double-wrapped in foil or plastic during cooking and when serving to Estes. Double-wrapped prepackaged kosher meals may be cooked in the Common Fare menu oven and served to Estes on Common Fare menu trays;

7. A temperature probe will not be used on the prepackaged kosher meals served to Estes;

---

[1] Estes now resides at Green Rock Correctional Center.

2

    8. The kosher certification from the Vaad HaKashrus of Tidewater, attached hereto as Exhibit 2, is acceptable for milk and juice;

    9. Estes can be served raw fruits and vegetables, whole and uncut;

    10. For breakfast, Estes will be served uncooked food, including dry cereal, cheese, bread, juice, fresh fruit, coffee and milk, but the Defendants may, as an alternative opt to serve him with prepackaged kosher meals. All food items served to Estes at breakfast will contain an acceptable kosher certification; . . .

(Dkt. No. 179.)  The supplemental consent order provides:

    1. Beginning on or about March 6, 2020, Defendants shall periodically provide Mr. Estes as part of his breakfast meal boiled eggs sealed under the supervision of a rabbi from Vaad HaKashrus of Tidewater.

    2. To the extent that any inmates receive dry cereal, individually packaged, with an acceptable Orthodox Jewish kosher certification, as provided for in the Consent Order, Mr. Estes shall be provided with that dry cereal as part of a breakfast meal.

    3. To the extent that any inmates receive rolls individually packaged and sealed in plastic with an acceptable Orthodox Jewish kosher certification, as provided for in the Consent Order, Mr. Estes shall be provided with those rolls or kosher bread. Beginning on or about March 16, 2020, Defendants agree to periodically provide Mr. Estes with slices of kosher bread that have been sliced and sealed under the supervision of a rabbi from Vaad HaKashrus of Tidewater.

    4. Defendants agree that to the extent any inmates are provided individually packaged and sealed desserts with an acceptable Orthodox Jewish kosher certification, as provided for in the Consent Order, Mr. Estes shall be provided with that dessert as well. . . .

(Dkt. No. 208.)

## II. Plaintiff's Motions and Various Filings, and Defendants' Responses

In his first motion to compel (Dkt. No. 254), Estes states that the defendants have "repeatedly disregarded and violated" the court's orders. This includes but is not limited to:

3

serving entrees open and unsealed; serving rotten and inedible vegetables; not serving items on page two, number 10, of the consent order; serving all soy meals (VDOC "instameal"); and not serving meat on a reasonable periodic basis. Estes states that he has written "several hundred complaints, grievances, and request forms" since 2018 but "no permanent resolution has been found." Estes stopped going to dining halls out of "total disgust with the constant fight to observe the kosher dietary laws . . . ."

In response, defendants note that Estes has provided only "generalized complaints" without any specific date or time. Defendants "do not take lightly its responsibility to this Court of the inmates in VDOC's charge. Other than stating a blanket denial of such allegations, the motion to compel cannot be addressed without any specifics." (Dkt. No. 255.)

In his second motion to compel, sworn under penalty of perjury,[2] Estes again states that defendants have "repeatedly disregarded and violated" the consent orders in this case. (Dkt. No. 256.) The "most serious" instance occurred on March 17, 2025, when regional food administrator Anderson, Mr. Purdue, and VDOC dietician K. Williams instructed the food service director T. Epps and Williamson at Green Rock to disregard the court's order and serve plaintiff from the "regular S.R.D. [sealed religious diet] menu . . . . This will allow Defendants to serve Plaintiff meals which are held to a far lower standard, which are unsealed and unkosher." (*Id.*)

Estes's motion for contempt includes similar contentions. (Dkt. No. 257.) He states that on March 18 and March 19, 2025, he was served a SRD meal that was open, unsealed, and unkosher. Plaintiff had a conference call on March 19 with Epps and Williamson at Green Rock,

---

[2] This is Estes' only filing that is sworn under penalty of perjury.

4

and Epps informed plaintiff that he had been instructed by Anderson, Purdue, and Williams to disregard the court order and serve Estes from the SRD menu.

Defendants responded by filing affidavits by A. Anderson, Western Region Food Services Director for the VDOC, and T. Epps, Food Service Coordinator at Green Rock. Anderson and Epps both aver that Estes continues to receive the sealed religious diet at Green Rock. (Epps Aff. ¶ 4; Anderson Aff. ¶ 4.) The diet is provided to approximately 50 inmates at this facility. (Epps Aff. ¶ 4.) The policy governing the sealed diet was written based on the settlement agreement in this lawsuit. (Anderson Aff. ¶ 4.) The cooked meals are sealed and double wrapped. (Epps Aff. ¶ 4; Anderson Aff. ¶ 4.) Before being served, the meals are heated in the oven. (Epps Aff. ¶ 4.) They are inspected before they leave the kitchen to make sure they are sealed. (*Id.*) While it is possible that during preparation of the sealed food items that the seal may come open and not be noticed by staff, this is not a routine occurrence. (Anderson Aff. ¶ 4.) All meals are inspected by food service staff before being served to the inmate. (*Id.*) If the seal comes open or becomes punctured, Estes can request another meal and it will be provided to him. (Epps Aff. ¶ 4.) Epps has never been advised to disregard the court order providing for Estes to receive the pre-packaged sealed religious diet. (*Id.*)

Anderson has not had any meetings with Epps or Williamson, the Assistant Food Services Director, in the presence of Estes. (Anderson Aff. ¶ 5.) Anderson has talked to Epps and Williamson about strict adherence to the sealed religious diet menu with no deviations. (*Id.*)

No changes have been made to the pre-packaged sealed meals received by Estes. The other religious diet meal at Green Rock is the common fare diet, but the two options cannot be confused. There are obvious visual differences to the meals to avoid confusion: the common fare diet is served unwrapped on a serving tray while the religious sealed meal entrees are served in

5

their original double wrapped containers on a different style tray. All items on the sealed diet are sealed including bread and cereals. The serving trays are different with the common fare tray being larger. The sealed diet tray has six 5-inch-deep compartments, while the common fare tray is larger with five one-inch-deep compartments. (*Id.* ¶ 6.)

In further support of his motions, Estes filed a grievance report showing that from March 25, 2024, to March 25, 2025, he filed 59 complaints related to his kosher meals. (Dkt. No. 258.)

Plaintiff also filed a letter documenting a meeting that took place between Estes, Epps, and the Assistant Warden to discuss problems with his kosher meals and led to a discussion about his motions. (Dkt. No. 259.) Estes states that the solution is that his meals will be provided to him frozen, and he will heat these with a microwave in the housing unit. Estes views this as a "satisfactory resolution to the problem of open packages of the kosher meals and entrees." (*Id.*)[3] However, regarding the second motion to compel and contempt motion, Estes contends that the VDOC "SRD" menu and policy do not align with the court's settlement orders. (*Id.*) "For Mr. Anderson and Ms. Williams to give this directive is certainly contemptuous and a blatant violation of the court order." (*Id.*) Estes lodges further complaints about an "egg omelet" that is "open every time it is served without fail." (Dkt. No. 260.)

In his most recent submissions, Estes enclosed "additional evidence" which are several Written Complaints submitted in 2025. (Dkt. No. 262.) Finally, in response to the affidavits provided by Epps and Anderson, plaintiff maintains that there are continued problems with a variety of meals during Passover, but "this is above the facility level." (Dkt. No. 264.) However, Estes concedes that if "the meals continue to be provided as they are now then this

---

[3] Despite this comment, it appears to the court that Estes has not withdrawn or abandoned his first motion to compel.

court's order will be followed as closely as possible." (*Id.*) Estes believes that his facility "is doing a better job at providing me kosher meals than any other facility would be able . . . ." (*Id.*)

**III. Analysis**

While plaintiff has captioned two of his motions as motions to compel, the court believes that all three motions can be considered as motions to hold defendants in contempt for not following the court's consent orders. This was how the court analyzed the various motions filed by Estes in its previous order. (Dkt. No. 245.) The pending motions will be denied for many of the same reasons set forth in that order.

A party moving for civil contempt must establish four elements by clear and convincing evidence:

> (1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*DeSimone v. VSL Pharm., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022). Recognized defenses to civil contempt include (1) a good-faith attempt to comply with the court's order; (2) substantial compliance; and (3) an inability to comply. *Lambert v. Gift Dev't Group, LLC*, 1:18-CV-00215, 2019 WL 177078, at *4 (M.D.N.C. Jan. 11, 2019). "Once the [movant] establishes that the [alleged contemnor] violated the [decree], the burden shifts to the [alleged contemnor] . . . to demonstrate that she made in good faith all reasonable efforts to comply with the [decree]." *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017). "Substantial compliance is found where all reasonable steps have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken." *United States v. Darwin Constr. Co.*, 873 F.2d 750, 754 (4th Cir. 1989). "If a violating party has taken all reasonable steps to comply with the court order,

7

technical or inadvertent violations of the order will not support a finding of civil contempt." *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 615–16 (D. Md. 2017) (citing *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986)).

As the court found previously, the first element for a finding of contempt is undisputed, and "at least some of the relief ordered in the consent orders was in Estes's favor, so the court will assume that the second element is established, as well. The court will discuss the third and fourth elements separately with regard to each of Estes's complaints." (Dkt. No. 245 at 8.)

Plaintiff's primary contention appears to be that he is dissatisfied with the SRD meals that he has been provided, specifically that it is often, or too often, unsealed. If Estes receives an unsealed meal, however, he can request one that is sealed. The court made the same observation in its previous order: "First of all, with regard to the unsealed meals, the responses to his grievances on this issue flatly state that if he receives a tray with a broken seal, he may ask for a new one. He alleges that he often receives trays where 'one or two' seals are broken, but he does not allege that he ever asked for a replacement and was denied one." (Dkt. No. 245 at 11.) This has been reaffirmed by Epps, the Food Service Coordinator at Green Rock. (Epps Aff. ¶4.) Thus, Estes cannot show that he was harmed by clear and convincing evidence because if "there was an easy way to obtain a replacement, as it seems, then there is no harm to him from receiving a tray with a broken seal." (*Id.*) The court finds, once again, that Estes has not been harmed by the defendants.

Estes also seems to think that the SRD is something distinct from the requirements set forth in the court's orders. As explained by Anderson, the policy regarding the SRD was based upon the settlement in this lawsuit. The fact that defendants revised their procedures for providing kosher meals to plaintiff, and to others, shows that defendants acted in good faith. To

8

the extent that Estes has argued that defendants have stated that they do not need to act in compliance with the court's orders, this appears to be a disconnect because entire food policy was changed to *comply* with those orders. Thus, compliance with the policy equates to compliance with the orders.

Estes has also lodged complaints about the quality of the food he has been receiving. For example, plaintiff complains about rotten and inedible vegetables, soy-based "Instameals", and the lack of meat on a regular basis. The court previously observed that the consent orders "do not direct or require that the food served be delicious or flavorful, or otherwise taste delicious, nor does the Eighth Amendment." (Dkt. No. 245 at 13.)

Ultimately, it appears that Estes has not considered the court's prior admonitions concerning the difficulty of compliance at a facility that serves "as many meals as his facility does each day." (Dkt. No. 245 at 14.) Occasional mistakes do not violate his First Amendment rights, his Eighth Amendment rights, or constitute civil contempt, which is drastic remedy with a heavy burden to establish. (*Id.* 13–14 (citing *Morgan v. Barry*, 596 F. Supp. 897, 898 (D.D.C. 1984), *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016), and *Lovelace v. Lee*, 472 F.3d 174, 194–95 (4th Cir. 2006)).) Estes is once again "encouraged to keep these principles in mind when considering future motions in this case." (Dkt. No. 245 at 14.)

### IV. Conclusion

The court will issue an appropriate order denying Estes's motions and closing this case.

Entered: September 8, 2025.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

9